UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GATEKEEPER SOLUTIONS, INC. | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-723-SDJ |
| | § | |
| DARKTRACE, INC. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Darktrace, Inc.'s Motion to Transfer Venue Under 28 U.S.C. § 1404(a). (Dkt. #16). Darktrace asks that the Court transfer this case to the Northern District of California. (Dkt. #16 at 5). Plaintiff Gatekeeper Solutions, Inc. opposes the motion, which has been fully briefed. (Dkt. #16, #21, #27). Because Darktrace has demonstrated that the Northern District of California is clearly a more convenient venue for this action, the motion will be granted.

### I. BACKGROUND

This is a patent-infringement case. Plaintiff Gatekeeper, a New York corporation, owns a patent covering "[a] system for ensuring an electronic communication being sent by a user to two or more recipients . . . is not sent to another conflicting recipient[.]" (Dkt. #1 ¶¶ 2, 12, 14) (quoting U.S. Patent No. 9,032,038). Gatekeeper alleges that Darktrace's "[e]mail product[,] which has a feature to prevent sending of an e-mail . . . to conflicting recipients," infringes its patent. (Dkt. #1 ¶ 15).

Defendant Darktrace, a Delaware corporation, "is based in the Northern District of California at its main office located [in] . . . San Francisco, California." (Dkt. #16 at 6). When this lawsuit was filed, Darktrace had a small office in Plano, Texas—staffed primarily by low-level salespeople—but that office has since closed.

(Dkt. #16-1 ¶ 5). Since the closing of its Plano office in August 2024, Darktrace has not had a physical presence in the Eastern District of Texas. (Dkt. #16-1 ¶ 5).

Relevant to its motion to transfer venue, (Dkt. #16), Darktrace presented uncontested testimony that all of its likely witnesses in this case work out of its San Francisco office and reside in San Francisco or the surrounding area. (Dkt. #16-1 ¶ 6); (Dkt. #27-1 ¶¶ 3–5). And to the extent Darktrace needs to call additional witnesses, those potential witnesses are based in Darktrace's Cambridge, United Kingdom office. (Dkt. #16-1 ¶ 7). None of Darktrace's potential witnesses are located in the Eastern District of Texas. (Dkt. #16-1 ¶ 8).

Darktrace also presented uncontested testimony that the vast majority of its customers of the accused product are located in the Northern District of California. Only one such customer is located in the Eastern District of Texas; approximately twenty-four are located in the Northern District of California. (Dkt. #16-1 ¶ 9).

Finally, Darktrace presented uncontested testimony that all documents relevant to the accused product are housed on servers located in its Cambridge and San Francisco offices. (Dkt. #16-1 ¶ 4). Darktrace has no relevant documents in the Eastern District of Texas. (Dkt. #16-1 ¶ 5).

## II. LEGAL STANDARD

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses, and in the interest of justice, to other districts or divisions where the plaintiff could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under

Section 1404(a), *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In patent cases, Section 1404(a) motions are governed by the law of the regional circuit— here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315. In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d

at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation omitted). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (citation omitted).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of clearly more convenient." *Quest NetTech*, 2019 WL 6344267, at *7 (cleaned up); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs against transfer).

## III. DISCUSSION

The threshold inquiry on a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203

4

(5th Cir. 2004). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The Court finds that venue would have been proper in the Northern District of California. It is undisputed that Darktrace's principal office is in San Francisco, (Dkt. #16 at 6), and Gatekeeper does not dispute that "some of the allegedly infringing acts asserted in the Complaint have occurred in the Northern District of California," (Dkt. #16-1 ¶ 2).

Having found that this threshold requirement is met, the Court will analyze each of the private- and public-interest factors to determine whether Darktrace has demonstrated that the Northern District of California is a "clearly more convenient" forum for this case than the Eastern District of Texas.

## A. The Private-Interest Factors

### i. Access to the Sources of Proof

When analyzing the first private-interest factor, courts interpret "sources of proof" to encompass "non-witness evidence, such as documents and other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020); *accord Volkswagen II*, 545 F.3d at 316. Courts in this District have held that this factor weighs in favor of transfer "when a majority of the tangible and documentary evidence is located in the transferee court's district." *Arnold v. Remington Arms Co.*, No. 6:16-CV-0074-RWS-KNM, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017) (collecting cases). In patent-infringement cases, "the bulk of the relevant evidence usually comes from the

accused infringer." *In re Apple Inc.*, 979 F.3d at 1340 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id*.

Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources. *See Volkswagen II*, 545 F.3d at 316. Parties must specifically identify and locate sources of proof and explain their relevance. *See Utterback v. Trustmark Nat'l Bank*, 716 F.App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-513-JRG, 2018 WL 2329752, at *5 (E.D. Tex. May 23, 2018). The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. "Thus, the physical location of evidence—even if stored electronically—remains a relevant consideration for the convenience analysis. However, the realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor superfluous." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-283-JRG, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021) (cleaned up).

Here, Darktrace argues that this factor favors transfer because at least some of the relevant documents in this case are housed on servers located in its San Francisco office, (Dkt. #16-1 ¶ 4), and no relevant documents are stored in the Eastern District of Texas, (Dkt. #16-1 ¶ 5). Gatekeeper does not dispute these factual allegations. Instead, Gatekeeper argues that this factor is neutral because the

relevant documents are electronic in nature, rather than physical, and their location (i.e., the location of the servers on which those documents are housed) is therefore irrelevant to accessibility.

It is true that "electronic storage of documents makes them more widely accessible than was true in the past, [but] that does not make the sources-of-proof factor irrelevant." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021). In other words, that the majority of relevant documents are electronic may affect the weight a court gives this factor, but it does not render this factor superfluous or "neutral," as Gatekeeper suggests. *See Volkswagen II*, 545 F.3d at 316. Thus, given that many relevant documents in this case are located in the Northern District of California, and none are located in the Eastern District of Texas, this factor favors transfer.

### ii. Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed, or regularly transacts business in person." *Id*. Because party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling* third-party witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-

7

CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316) (emphasis added).

Here, Darktrace identifies two categories of potential unwilling witnesses: (1) its customers of the accused product, and (2) its former employees. (Dkt. #16 at 13–14). Darktrace presented uncontroverted evidence that approximately two dozen of its customers of the accused product are located in the Northern District of California, and only one such customer is in the Eastern District of Texas. (Dkt. #16-1 ¶ 9). Darktrace also presented uncontroverted evidence that its potential employee-witnesses reside in the Northern District of California. (Dkt. #27-1 ¶¶ 3–5). Should any of those employee-witnesses leave Darktrace before trial and become unwilling witnesses, they are "more likely to be located in the Northern District of California, as compared to the Eastern District of Texas." (Dkt. #16 at 13).

In response, Gatekeeper asserts, without explanation, that "Defendant has not identified any potential witnesses who are not employees of the Defendant and who thus might have to be subject to compulsory process." (Dkt. #21 at 7). That's not true. As explained above, Darktrace identified two categories of potential unwilling witnesses, nearly all of whom reside in the Northern District of California. Thus, this factor favors transfer.

### iii. Cost for Willing Witnesses

Private-interest factor three, which focuses on the "cost of attendance for willing witnesses," *Volkswagen II*, 545 F.3d at 315, "is probably the single most important factor in transfer analysis," *In re Genentech*, 566 F.3d at 1343 (quoting *Neil*

*Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006)). It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation omitted).

The Northern District of California is clearly more convenient for the majority of expected witnesses. All of Darktrace's expected witnesses work and reside in the Northern District of California; none work or reside in the Eastern District of Texas. (Dkt. #16-1 ¶ 6); (Dkt. #27-1 ¶¶ 3–5). Gatekeeper has not identified any witnesses of its own or alleged that the Eastern District of Texas is more convenient for any expected witnesses. Because most expected witnesses reside in the Northern District of California—more than 1,700 miles from the Eastern District of Texas—this factor favors transfer.

### iv. All Other Practical Problems that Make Trial Easy, Expeditious, and Inexpensive

When considering the private-interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

Here, the parties have not identified any reason why judicial economy would be served—or, alternatively, frustrated—by transferring this matter to the Northern

District of California. This case has been stayed pending ex parte reexamination since April 2025, *see* (Dkt. #36), and is still at an early stage such that the Court has not gained substantial familiarity with the merits of the case. Private-interest factor four is therefore neutral.

## B. The Public-Interest Factors

The parties submit that the third and fourth public-interest factors—the forum's familiarity with governing law, and avoidance of unnecessary conflict-of-law issues—are neutral in the transfer analysis. The Court agrees. Both the Eastern District of Texas and the Northern District of California are competent to resolve patent-infringement disputes. *See, e.g.*, *Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1003–04 (E.D. Tex. 2009) ("[B]oth this Court and the District of Oregon are equally capable of applying patent law."). And no conflict-of-law issues have been presented in this matter.

The Court now addresses the remaining public-interest factors concerning court congestion and local interests.

### i. Court Congestion

The first public-interest factor concerns "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. In the transfer analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech, Inc.*, 566 F.3d at 1347.

Darktrace argues that this factor is neutral because "the average time from filing to disposition for civil cases in the Eastern District of Texas and the Northern District of California is the same—7.6 months." (Dkt. #16 at 16) (citing (Dkt. #16-3 at 2–3)). Gatekeeper argues that this factor weighs against transfer because the Northern District of California's average time to trial is more than double that of the Eastern District of Texas. (Dkt. #21 at 11); *see also* (Dkt. #16-3 at 2–3).

The Court notes that these district-wide statistics do not reflect the Sherman Division's disproportionately high caseload, and may be skewed by lighter caseloads in other divisions within this District. *See* Michelle Casady, *EDTX Chief Judge Mazzant Carves Up Sherman Docket, Four More Judges Take a Share*, The Texas Lawbook (Mar. 13, 2025), https://texaslawbook.net/edtx-chief-judge-mazzant-carves-up-sherman-docket-four-more-judges-take-a-share/ ("The Sherman Division is the busiest division in the Eastern District of Texas, having a robust civil and criminal docket." (quoting Chief Judge Mazzant)).[1] Given that the data on the relative speed of case-resolution as between this Court and the Northern District of California is inconclusive, and recognizing that this is the most speculative factor in the transfer analysis, the Court concludes that this factor is neutral.

---

[1] As of the beginning of this month, the Court's weighted caseload is about 1,791 cases, which includes a weighted civil caseload of 682 cases and a weighted criminal caseload of 1,108 cases. The Court understands the guidance from the Administrative Office of the U.S. Courts to be that the weighted caseload for a federal district judge should not exceed 430 cases.

### ii. Local Interests

The second public-interest factor, which focuses on the local interest in having localized interests decided at home, "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (cleaned up). Important considerations include the location of the injury, witnesses, and the plaintiff's residence. *Id.* (citing *Volkswagen II*, 545 F.3d at 317–18). As the Fifth Circuit has made clear, "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up).

The Northern District of California has a greater local interest in this case than the Eastern District of Texas. All of Darktrace's expected witnesses, and many of its relevant documents, are located in the Northern District of California. (Dkt. #16-1 ¶¶ 4, 6). And at least "some of the allegedly infringing acts asserted in the Complaint have occurred in the Northern District of California." (Dkt. #16-1 ¶ 2). By contrast, there is nothing connecting the case to this District. Neither party resides in this District, *see* (Dkt. #1 ¶¶ 2–3), and Darktrace closed its only (small) office in this District over a year ago. (Dkt. #16-1 ¶ 5). For these reasons, the local-interest factor weighs in favor of transfer.

\*      \*      \*

Four of the eight private- and public-interest factors weigh in favor of transfer, and none of the factors weighs against transfer. A motion to transfer venue should be

granted if the moving party shows that one venue is "clearly more convenient" than the other. *Genentech*, 566 F.3d at 1342. The Court, having considered the facts and law, concludes that the Northern District of California is clearly the more convenient venue to resolve this action than the Eastern District of Texas.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant Darktrace, Inc.'s Motion to Transfer Venue Under 28 U.S.C. § 1404(a), (Dkt. #16), is **GRANTED**.

It is further **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Northern District of California.

**So ORDERED and SIGNED this 19th day of November, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE